FILED

2008 Mar-27  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

|  |  |  |
|---|---|---|
| **JAMES CARSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **CASE NO. CV 06 -B-869-NW** |
| | } | |
| **MICHAEL J. ASTRUE,**[1] | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff James Carson ("Carson") brings this action pursuant to sections 205 and

1631(c) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking

review of the decision by the Commissioner of Social Security ("Commissioner") denying

Carson's applications for disability insurance benefits ("DIB") and supplemental security

income ("SSI") under Titles II and XVI, respectively, of the Act.  Upon review of the

record, the submissions of the parties, and the relevant law, this court is of the opinion

that the ALJ's decision denying benefits is due to be affirmed in part and reversed in part,

with the case remanded for further proceedings consistent with this Memorandum

Opinion.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this suit by operation of law.

# I. PROCEDURAL HISTORY

Carson filed applications for DIB and SSI on July 29, 2004, with a protective filing date of May 11, 2004, and an alleged disability onset date of May 15, 2004. (R. at 34–38, 373, 380.)[2]  Upon denial of his applications, (R. at 20–21), Carson timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 27.)  The hearing took place on November 29, 2005, during which Carson was represented by counsel and both Carson and a vocational expert ("VE") testified. (R. at 373–410.)  On January 25, 2006, the ALJ denied Carson's claim for benefits. (R. at 8–19.)  Because the Appeals Council subsequently denied Carson's request for review, the ALJ's decision became the final decision of the Commissioner. (R. at 4–6.)  Having exhausted his administrative appeals, Carson timely instituted the present action against the Commissioner on May 4, 2006, seeking review of the Commissioner's final decision. (Doc. 1.)[3]

# II.  STANDARD OF REVIEW

This court's role in reviewing claims brought under the Act is a narrow one, limited to determining 1) whether there is substantial evidence in the record to support the Commissioner's decision, and 2) whether the Commissioner based his decision upon proper legal standards. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see*

---

[2] The reference format, ["R. at ___"], refers to page numbers as they appear in the certified copy of the transcript of the administrative record, filed with the court by the Commissioner in accordance with 42 U.S.C. § 405(g).

[3] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's case docket.

*also* 42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  It is "more than a mere scintilla, but less than a preponderance." *Id.*

   This limited scope of review does not render affirmance automatic; on the contrary, "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of decision reached." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) (internal quotations omitted).  While the court may not substitute its judgment for that of the Commissioner by deciding facts anew, reweighing evidence, or making credibility determinations, *see Bloodsworth*, 703 F.2d at 1239, 1242, the court must review *de novo* the Commissioner's conclusions of law, *see Moore*, 405 F.3d at 1211; *Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992).

   The burden is on the claimant to prove disability.  *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973), *cert. denied,* 414 U.S. 913 (1973).  The claimant's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).  Even if the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth*, 703 F.2d at 1239.

### III. FACTUAL SUMMARY

Carson was forty-five years old at the time of the hearing before the ALJ.  (R. at 375.)  He has the equivalent of a high school education and significant prior work experience.  He has worked as a general laborer, line worker, construction worker, and saw mill worker, and he worked for nearly fifteen years as a delivery driver for the Coca-Cola Company, losing that job after a strike.  (R. at 37, 44, 53, 59.)  Carson last worked in May 2004 laying cable for Comcast, but he has not worked since the alleged onset date of his disability on May 15, 2004.  (R. at 59, 379, 383.)

### A.    Carson's Alleged Impairments

Carson contends that he is disabled primarily from heart disease, but also from high blood pressure, gout in his feet, nerves, asthma, back pain, knee pain, and blindness in his left eye.  (R. at 21, 52, 386–88.)  According to Carson, his heart condition limits his ability to work because he suffers from dizzy spells and cannot "hold out to work," apparently meaning that he feels too weak and fatigued to work.  (R. at 52–53, 382, 390, 403–04.)  He quit his two most recent jobs after only a few weeks because of fatigue.  (R. at 71, 380–83.)

Essentially, Carson claims that his impairments prevent him from sustaining activity for more than a short period of time: he attests that he can only remain up and active for about an hour or an hour-and-a-half before he needs to lie down, or, on his better days, for four to five hours.  (R. at 392, 404, 406–07.)  In particular, Carson

4

testified before the ALJ that he is only able to sit for an hour-and-a-half, stand for an hour, and walk for one mile at a time. (R. at 403.) He also testified that he takes naps three times a day, usually at 9:00 a.m., 1:00 p.m., and 5:00 p.m., lasting between thirty minutes to an hour. (R. at 404.)

Despite these constraints, Carson acknowledges that he can perform all of his own household chores, including yardwork. (R. at 401.) It takes him, however, an hour to cut his 100- by 150-foot lot, with a rest break of about fifteen to twenty minutes. (R. at 405–06.) Since the alleged onset of his disability, Carson testified that he spends much of his days lying on the couch, watching television. (R. at 392, 400.) Although he is able to drive, he does not have a car, so he requires rides to the store. (R. at 69–71, 388, 401–02.) He rarely leaves his house, but a family member stops by to visit two to four times per week, and his friends also occasionally stop by. (R. at 70, 74–75, 399, 403.)

Carson's initial disability application did not mention a breathing disorder, but at the hearing before the ALJ, both Carson and his attorney allude to a recent diagnosis during a hospital visit of chronic obstructive pulmonary disease ("COPD"). (R. at 390, 397.) Carson admits that he has smoked two to three packs of cigarettes per day since he was a teenager, (R. at 200), and at the time of his hearing before the ALJ, that he continued to smoke about one to one-and-a-half packs per day.[4] (R. at 393–94.)

---

[4] The Commissioner argues in its brief that Carson's continued use of cigarettes despite his pulmonary impairments and against medical advice suggests that his condition is not as severe as he alleges. *See Holley v. Chater*, 931 F. Supp. 840, 847–48 (S.D. Fla. 1996). This argument ignores the now well-known and judicially-recognized fact that smoking is an addictive

**B.     Carson's Medical Records**

Carson's medical records cover the period between February 2000 and Septmeber 2005 and include documentation from his primary care physicians and cardiologist, as well as from various hospital visits and a consultative examination.  The records confirm that Carson does indeed suffer from coronary artery disease, for which he has undergone angioplasty and stenting procedures; poorly controlled hypertension; tobacco abuse and nicotine dependency; recurrent and asthmatic bronchitis; irritable bowel syndrome; and Coats's disease.[5]  (R. at 99, 101, 130, 170, 200–01, 215, 369.)  Although Carson

---

behavior.  *See, e.g.*, *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 138 (2000); *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1249–50 (N.D. Ala. 2004) (citing with approval *Shamrek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("We note that even if medical evidence had established a link between smoking and [the claimant's] symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful.  Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health.")).  Indeed, Carson's own doctors sometimes refer to Carson's cigarette use as "nicotine dependency."  (R. at 101, 170.)

[5] "Coats's disease" refers to a "chronic inflammatory disease of the eye that is characterized by white or yellow areas around the optic disk due to edematous accumulation under the retina and that leads to destruction of the macula and to blindness."  *See* Merriam Webster's Medical Dictionary Online, *available at* http://medical.merriam-webster.com.  The Commissioner argues that Carson's alleged left-eye blindness is not supported by the record because the consultative examination indicated that his vision was 20/13 and that Carson's ability to drive was not significantly impaired.  In fact, using "Snellen's test," the "test for visual acuity [of] presenting letters of graduated sizes to determine the smallest size that can be read at a standard distance," *see id.*, the consultative examination found that while Carson's vision out of his right eye ("O.D.," or *oculus dexter*) and both eyes ("O.U.," or *oculi uterque*) was 20/13, he was "unable to see the chart" with his left eye ("O.S.," or *oculus sinister*).  (R. at 201); Dorland's Illustrated Medical Dictionary 1169, 1195, 1205 (28th ed. 1994).  These findings were repeated in Carson's residual functional capacity ("RFC") assessment.  (R. at 204, 206.)  Furthermore, the consultative examination concluded that Carson had Coats's disease.  (R. at 201.)

complained to physicians of fatigue, weakness, and low endurance on several occasions, (R. at 101, 167, 179, 200, 369), and frequently presented with symptoms of sinus congestion and chest pain, (R. at 97, 99, 152, 174, 177, 179, 186, 188, 190, 194, 214, 369), there are no findings by any of the physicians either examining or treating Carson that these conditions were severe enough to warrant functional limitations on his daily activities.  At the same time, however, none of Carson's examining or treating physicians provided — or were asked to provide — a physical capacity evaluation or RFC assessment; instead, Carson's only RFC assessment, used by the ALJ to arrive at his own RFC determination, was made by a disability specialist and medical consultant who based their conclusions on a review of the medical evidence in the record.  (R. at 202–09.)  This RFC assessment, which occurred prior to Carson's initial benefits denial, found that Carson remained able to lift up to twenty pounds, to stand and/or walk about six hours in an eight-hour workday, and to sit for about six hours in an eight-hour workday.  (R. at 203.)

**C.     Testimony of the VE**

At the administrative hearing, the VE first provided the classifications for Carson's past relevant work from the *Dictionary of Occupational Titles*.  The VE testified that Carson's previous job as a construction worker was rated as very heavy and unskilled, that his job as a route delivery driver was medium and semi-skilled, and that his job as a saw mill worker was also medium and semi-skilled.  (R. at 386.)  The VE could not

7

classify Carson's remaining jobs because he had not performed them for more than ninety days.  (*Id.*)

The VE also answered several hypothetical questions posed by the ALJ.  The ALJ initially asked whether, assuming Carson could lift up to twenty pounds, sit for one to one-and-a-half hours at one time, stand for an hour at one time, and walk for a mile at one time, Carson could perform any of his past jobs or whether there was other work in the national economy that he could perform.  (R. at 407–08.)  With this question, the ALJ essentially asked the VE to consider Carson's conditions as Carson himself had assessed them, with the notable omission of Carson's alleged need to lie down after an hour to an hour-and-a-half of activity.  The VE responded that with the limitations posed by the hypothetical, Carson could not return to his past work, but that there was substantial unskilled work, both light and sedentary, within those limitations in the national economy.  (R. at 408.)  The ALJ then asked the VE to estimate the maximum time that an individual with a need to lie down could do so while still maintaining regular employment.  (R. at 409.)  The VE replied that a person could lie down for up to an hour a day, and still maintain a regular workday, by combining the lunch break with the morning and afternoon breaks.  (*Id.*)  Finally, the ALJ inquired whether, if an individual still could not sustain work for eight hours a day even with a one-hour combined period to lie down, there would be substantial numbers of jobs in the national economy.  (*Id.*)  The VE confirmed that such an individual could not find substantial gainful employment,

8

since all such employment requires that an individual perform some combination of

sitting, standing, and walking for about eight hours a day.  (*Id.*)

## IV. DISCUSSION

### A.   Five-Step Evaluation for Eligibility for DIB and SSI

The regulations implementing the Act require the Commissioner to follow a five-

step sequence to evaluate whether a claimant is "disabled" within the meaning of the Act

and thus entitled to DIB and SSI benefits.[6]  *See* 20 C.F.R. § 404.1520(a)(4); *Jones v.*

*Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000).

First, the claimant must establish that he is not engaged in substantial gainful

activity.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial activity" means any work that

involves doing significant physical or mental activities, while "gainful" work is any work

that is usually done for pay or profit, whether or not a profit is realized.  *See id.* at

§ 404.1572.  If the claimant is so engaged, the Commissioner will find the claimant not

disabled.  *See id.* at § 404.1520(b).

Second, the claimant must establish that he has a severe medically determinable

---

[6]  The standard for assessing whether a claimant is "disabled" is the same for both DIB and SSI claims because both share a common definition of "disability," defining it as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Compare* 42 U.S.C. § 423(d) *with* § 1382c(a)(3)(A).  Although there are distinct statutory provisions and regulations regarding each type of claim, DIB and SSI, many of the provisions and regulations are identical or contain materially similar content.  Therefore, citations in this opinion to statutes, regulations, or court opinions involving one type of claim should be construed to refer to the other as well, as context requires.

physical or mental impairment or combination of impairments that meets the duration requirement. *See id.* at §§ 404.1520(a)(4)(ii), 404.1509. A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. *See id.* at § 404.1520(c). If the claimant does not have such an impairment or combination of impairments that also meets the duration requirement, the Commissioner will find the claimant not disabled. *See id.* at § 404.1520(a)(4)(ii).

Third, the claimant must establish that his impairment or combination of impairments meets or equals an impairment in the regulations' Listing of Impairments ("the listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See id.* at § 404.1520(a)(4)(iii). If the impairment or combination of impairments does meet or equal an impairment in the listings, the Commissioner must conclusively find the claimant disabled, regardless of the claimant's age, education, and work experience. *See id.* at § 404.1520(d). Otherwise, the Commissioner will proceed to the fourth step.

Fourth, the claimant must establish that his RFC[7] does not enable him to do his past relevant work.[8] *See id.* at §§ 404.1520(a)(4)(iv), 404.1520(f). If, upon comparing the claimant's RFC with the physical and mental demands of his past relevant work, the

---

[7] The regulations define RFC as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. *Id.* at § 404.1520(e).

[8] "Past relevant work" is limited to work that the claimant has done in the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id.* at § 404.1560(b)(1).

Commissioner finds that the claimant can still perform his past work, then the Commissioner will find the claimant not disabled. *See id.* at § 404.1520(f).

Fifth, and finally, the Commissioner must assess the claimant's RFC and his age, education, and work experience (*i.e.*, the claimant's vocational factors) to determine whether the claimant can make an adjustment to other work.[9] *See id.* at §§ 404.1520(a)(4)(v), 404.1520(g)(1). Unlike with steps one through four, in which the claimant has the burden of proof, in this step the Commissioner has the burden of providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant is able to perform, given the claimant's RFC and vocational factors. *See id.* at §§ 404.1520(g)(1); 404.1560(c)(2); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Jones*, 190 F.3d at 1228. This burden-shift is only temporary, however, because once the Commissioner has provided such evidence, the claimant must then prove that he is unable to perform that other work listed by the Commissioner in order to be found disabled. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**B.      Decision of the ALJ**

The ALJ in this case, upon reviewing the evidence in the record, decided that

---

[9] By "other work," the regulations mean jobs that "exist in significant numbers in the national economy" and are either in the region where the claimant lives or in several regions in the country. *See id.* at § 404.1560(c)(1); *see also* 42 U.S.C. § 423(d)(2)(A) (defining "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country").

Carson was not disabled.  (R. at 11.)  Applying the steps of the sequential evaluation, the ALJ first found that Carson had not engaged in substantial gainful activity since his alleged onset date.  (R. at 12.)  The ALJ then determined that Carson had two conditions that were "severe" within the meaning of the regulations: 1) coronary artery disease, status post stents, and 2) hypertension.  (R. at 13.)  The ALJ concluded, however, that neither of these impairments was severe enough to meet or medically equal, either singly or in combination, one of the listed impairments.  (*Id.*)

Before proceeding to the fourth step, the ALJ decided Carson's RFC by considering all of Carson's symptoms, including allegations of pain, and applied the Eleventh Circuit's "pain standard"[10] to Carson's subjective complaints.  (R. at 14.) Evaluating the medical evidence in the record as well as Carson's testimony about his daily activities, such as cooking and cleaning, the ALJ found that while Carson did have some impairments, primary among them his heart problems, his testimony about the severity of his condition was not fully credible: "the objective medical evidence does not

---

[10] The Eleventh Circuit has delineated "a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam); 20 C.F.R. § 404.1529.

substantiate the alleged severity of the claimant's condition."[11]  (R. at 15.)  Still, the ALJ

effectively corroborated Carson's own testimony about his physical limitations, with the

exception of his alleged need to lie down, when the ALJ found that Carson had an RFC

that allowed him to lift and carry up to twenty pounds, sit for one to one-and-a-half hours,

stand for one hour, and walk one mile.  (*Id.*)  The ALJ did not specify in his decision

whether the periods mentioned for Carson's ability to sit, stand, and walk, meant "at one

time," or meant the maximum amount Carson could manage during the day; moreover,

the ALJ did not explicitly address how his RFC determination incorporated, if at all,

Carson's fatigue and need to lie down.  In any event, based on this RFC and the testimony

of the VE, the ALJ found that Carson was not able to return to any of his past relevant

work.  (*Id.*)

 At the final, fifth step, the ALJ determined that there were other jobs existing in

significant numbers in the national economy that were consistent with Carson's RFC, age,

education, and work experience.  (R. at 16.)  The ALJ based his findings on the Medical-

Vocational Guidelines in the regulations and on the testimony of the VE, citing several

examples of jobs that Carson could perform.  (R. at 16–17.)  The ALJ thus concluded that

---

 [11] Although the ALJ specifically stated, at the outset of his pain standard analysis, that
"neither prong of part two is met for the reasons stated below," his conclusion only referred to
the first prong and never explicitly addressed whether "the objectively determined medical
condition," in this case Carson's acknowledged heart problems, "is of such severity that it can be
reasonably expected to give rise to the alleged pain."  The ALJ is not required, however, to cite
to the exact language of the pain standard; instead, he must only indicate that the standard was
applied.  *Wilson v. Barnhart*, 284 F.3d 1219, 1226–27 (11th Cir. 2002) (per curiam).

Carson had the capability to perform a significant range of light work, (R. at 16), and, as a result, was not under a "disability" as defined in the Act, (R. at 17).

**C.     Carson's Arguments for Reversal and Remand**

Carson principally argues that the ALJ failed to properly address Carson's allegations that he is unable to sustain activity during the day for a period of more than four to five hours, but the discussion in his brief actually presents several distinct arguments: 1) that the ALJ did not evaluate Carson's RFC in accordance with the Social Security Administration's ("SSA") policy of assessing an individual's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," as set forth in Social Security Ruling ("SSR") 96-8p;[12] 2) that the ALJ took Carson's statements out of context in finding Carson less than credible and did not articulate reasons for rejecting Carson's testimony; and 3) that the ALJ improperly used Carson's testimony that he could perform household activities as support for the ALJ's finding that Carson was able to perform sustained work.  (Doc. 7 at 6–10.)

The court agrees with Carson's first contention, that the ALJ did not assess Carson's RFC in accordance with circuit law and the SSA's interpretive rulings requiring

---

[12] SSRs are published under the authority of the Commissioner and are binding on all components of the SSA.  20 C.F.R. § 402.35; *Jones v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 767, 770 (11th Cir. 2006).  "The rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35.  SSRs are not binding on courts, but they are entitled some deference because they represent the Commissioner's interpretation of the agency's regulations.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam).

work performance on a "regular and continuing basis" and did not present substantial

evidence for such a finding.  The court finds, however, that the ALJ did not take Carson's

statements out of context or fail to articulate sufficient reasons for finding his testimony

less than fully credible, nor did the ALJ err in considering Carson's testimony about his

household activities in reaching his conclusions, since the ALJ did not treat those

activities as dispositive of Carson's ability to perform sustained work.

### 1. Whether the ALJ Properly Evaluated and Supported Carson's RFC

The Eleventh Circuit, citing the SSA regulations, defines RFC as "an assessment,

based on all of the relevant evidence, of a claimant's remaining ability to do work despite

his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  In SSR 96-

8p, the Commissioner established the procedure that the ALJ must follow in explaining

his RFC determination, mandating that

> the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting
> on a *regular and continuing basis (i.e., 8 hours a day, for 5*
> *days a week, or an equivalent work schedule)*, and describe
> the maximum amount of each work-related activity the
> individual can perform based on the evidence available in the
> case record.

SSR 96-8p, 1996 WL 374184, at *7 (emphasis added).  Significantly, the Commissioner

has taken the position in this circuit that in a fifth step case, such as the case at hand,

"only an ability to do full-time work will permit the ALJ to render a decision of not

disabled." *See Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999) (per curiam) (noting

15

the Commissioner's position but declining to decide whether that position was legally required because the ALJ in that case had properly found the claimant capable of full-time work); *see also Moody v. Barnhart*, 295 F. Supp. 2d 1278, 1283 (N.D. Ala. 2003) (citing *Kelley* for its conclusion that "if a plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work" in order to prevent a finding of disability).  Using the SSA's own interpretive rulings and the Commissioner's previous positions in this circuit, then, an ALJ must discuss his RFC findings in such a way that there is no question that the claimant can perform sustained work activities in an ordinary setting on a "regular and continuing basis."  In the event that the ALJ deems the claimant unable to perform full-time work, the ALJ must render a finding of "disabled."

In the instant case, the ALJ decided that Carson's RFC was limited to sitting for an hour to an hour-and-a-half and standing for an hour.  These time periods notably mimic Carson's own testimony and are substantially smaller than those recorded by the disability specialist and medical consultant, who deemed Carson able to sit and stand for about six hours in an eight-hour workday.  Thus, the assessment by the ALJ that Carson could sustain no more than two-and-a-half hours of sitting and standing combined, with additional time for walking up to one mile, falls far short of the eight hours of sustained activity per day required by SSR 96-8p.  Even assuming, however, that the ALJ intended for the time limits he placed on Carson's sitting, standing, and walking to represent the

maximum that Carson could perform *at one time* (given that, at the hearing, the ALJ used these same limits but qualified them with the phrase, "at one time"), the ALJ has not presented substantial evidence supporting a decision that such intermittent sitting, standing, and walking yields eight hours of sustained activity, or even at least seven hours of activity with one hour of breaks, as the VE testified would constitute a regular workday.

The Commissioner argues that the ALJ's assessment of RFC complies with SSR 96-8p because the ALJ discussed the relevant medical and non-medical evidence and found that Carson could perform a significant range of light work.  (Doc. 9 at 9.)  This argument skips the logical step required by the regulations, however, that the ALJ must first properly determine a claimant's RFC before using that RFC as one of the factors, along with age, education, and experience, from which the ALJ decides whether the claimant can adjust to other work in the national economy.  Since the ALJ in this case did not substantiate his RFC determination, this RFC cannot in turn be used to support the level of work that the ALJ considers Carson capable of performing.  In addition, the Commissioner's contentions that the ALJ's findings meet the exertional demands of "light work" lack merit for the same reasons that those findings fail to comply with SSR 96-8p.  (*Id.* at 9–10) ("Clearly, the finding that plaintiff could stand for one hour and walk one mile demonstrates an ability to perform light work.").  Sitting for an hour-and-a-half, standing for an hour, and walking for one mile does not enable one to perform "light

17

work" that, by definition, "requires a good deal of walking or standing, or . . . involves sitting most of the time . . . ." *See* 20 C.F.R. § 404.1567(b).

Consequently, absent an RFC determination that unequivocally demonstrates that Carson can perform work on a "regular and continuing basis," that is, for eight hours, five days a week, or an equivalent work schedule, the ALJ cannot sustain his conclusion that Carson is not disabled.  In particular, the ALJ cannot establish that the Commissioner has met its fifth step burden of providing evidence sufficiently demonstrating that other work exists in significant numbers in the national economy that the claimant is able to perform, since that conclusion is based in part on the accuracy of Carson's RFC.  As a result, the case must be remanded to the ALJ for further clarification about Carson's RFC, and specifically whether Carson's RFC supports his ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  While the court finds it unlikely that Carson's RFC, as the ALJ has determined it, permits substantial gainful employment, it is possible that the ALJ might still find Carson capable of eight hours of work per day, if the time periods indicated by the ALJ referred to Carson's abilities "at one time," and if the ALJ maintained that Carson could rotate through these activities without rest breaks for more than one hour during an eight-hour workday.  To be sure, the court does not remand the case as an empty exercise or to participate in a judicial ping-pong game, as the Commissioner cautions the court to avoid, (Doc. 9 at 11), but instead remands the case to ensure that the ALJ has not given Carson an RFC that is

18

fundamentally inconsistent with a finding of "not disabled," under the Commissioner's own rulings and regulations.

**2. Whether the ALJ Properly Discredited Carson's Testimony**

Carson asserts that the ALJ, in deciding that Carson's testimony was "not fully credible," took Carson's statements out of context and failed to present adequate reasons for rejecting that testimony. (*Id.* at 7–10.)  In particular, Carson complains that the ALJ did not cite to certain pieces of Carson's subjective testimony that might have supported a conclusion different than that reached by the ALJ. (*Id.* at 8.)

If an ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so; failure to articulate those reasons requires, as a matter of law, that the testimony be accepted as true. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  The ALJ is not required, however, to present and discuss each and every piece of a claimant's subjective testimony in his written decision; instead, he must only make a reasonable decision to reject the testimony and explain his reasons for doing so. *See id.* at 1226.  One recognized method for articulating such reasons is to cite, in detail, evidence in the record that is contrary to the claimant's testimony. *See id.*

In this case, the ALJ did articulate explicit and adequate reasons for finding Carson "not fully credible" by citing to specific medical and non-medical evidence in the record that contradicted, or at least cast doubt upon, the severity of Carson's alleged limitations.  Although the ALJ might have more clearly referred to and discredited

19

Carson's subjective complaints of fatigue, which appear to be the common thread of the testimony that Carson claims was not properly discredited, the ALJ's thorough discussion of Carson's medical treatment and Carson's ability to perform household activities provide sufficient reasons for the ALJ's credibility finding.  Thus, the ALJ properly evaluated the credibility of Carson's subjective testimony and had substantial evidence supporting his decision that the testimony was "not fully credible."

### 3. Whether the ALJ Properly Considered Carson's Testimony Regarding Household Activities

Carson's final argument hinges on whether the ALJ erred in using Carson's testimony about his household activities in support of the ALJ's finding that Carson was able to perform sustained work.  (Doc. 7 at 10.)  In particular, Carson cites to an Eleventh Circuit case holding that "[h]ousework, light cooking, and light grocery shopping are minimal daily activities," and as such, "they are not *dispositive* evidence of one's ability to perform sedentary work in a Social Security case."  *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (11th Cir. 1998) (emphasis added).  However, the Eleventh Circuit has also held that an ALJ is permitted to base his decision, at least in part, on a claimant's testimony concerning his daily activities as long as that testimony is not used at the first step of the disability evaluation, in determining whether the claimant is presently engaged in substantial gainful activity.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).  In fact, the mere combination of an ability to perform the activities of daily living as well as limited use of pain medication was sufficient for the Eleventh Circuit to

20

approve of an ALJ's decision to reject a claimant's subjective testimony. *See Wilson*, 284 F.3d at 1226.

In his written opinion, the ALJ cited to ample evidence other than Carson's household activities in support of his decision; indeed, not even Carson contends that the ALJ considered Carson's daily activities as dispositive evidence of Carson's abilities, but only that the ALJ used that evidence *in support of* his findings.  Because Carson's daily activities, including his ability to make his own meals, take care of his personal hygiene, clean his house, and mow his lawn, were clearly not the sole reasons that the ALJ found Carson capable of performing sustained work, the ALJ did not err in using these activities in combination with other evidence to support his final decision.

## V.  CONCLUSION

Applying the standard of review outlined above and upon consideration of the record as a whole, the memoranda of the parties, and the decision of the Commissioner, this court finds that the Commissioner's decision is due to be affirmed in part and reversed in part, with the case remanded for proceedings not inconsistent with this opinion.  Upon remand, the Commissioner shall evaluate Carson's RFC in accordance with SSR 96-8p and support with substantial evidence any decision that Carson can perform sustained work activities in an ordinary work setting on a "regular and continuing basis," meaning eight hours per day, five days a week, or an equivalent work schedule. An Order in accordance with this Memorandum Opinion will be entered

21

contemporaneously herewith.

      **DONE** this 27th day of March, 2008.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE